OPINION OF THE COURT
Denis R Hurley, J.
This is an educational neglect proceeding commenced by the petitioner, Port Jefferson School District in November, 1983, against Robert Baer and Esther Baer, who have allegedly failed to provide their children with adequate education within the meaning of section 1012 (subd [f], par [i], cl [A]) of the Family Court Act. The petition of the school district alleges, inter alia, that since October 6, 1983, the respondent parents have brought their children Asher, age nine, and Sharisse, age six, to the Scraggy Hill Elementary School each day and dropped them off, despite the fact that the Baers are not residents of the district. The petitioner asserts that since the children are not entitled to attend school within the Port Jefferson District, they are not being admitted to classes, thus adversely affecting their education. The district contends that the actions of the parents in wrongfully depositing their children at the school has impaired or is likely to impair the children’s physical, mental or emotional condition within the meaning of section 1012 of the Family Court Act.
*564 The matter was initially returnable before the court on November 7, 1983 at which time only the respondent Robert Baer appeared. The evidence indicated that Mrs. Esther Baer was properly served with the pleadings in the action, although, according to her husband, she did not intend to appear. Her default was noted, and Robert Baer elected to proceed pro se.
The hearing on the matter consumed seven days or parts of days from November 16, 1983 to June 8, 1984. At the beginning of the proceedings on each day, the court asked Mr. Baer if he expected his corespondent wife to be present, to which he replied “no”, indicating again that she did not intend to appear, but adding that he was keeping her advised of developments in the case.
When Mr. Baer was present, he fully participated in the hearing, aggressively engaging in the examination of all witnesses, both those called by the school district and by himself. Moreover, his testimony, when called by the school district as part of its direct case, was extensive. Yet he did not always elect to be present. Although he was personally served in court on January 11, 1984, with a written notice of the hearing’s continuation at 2:00 p.m. on January 25,1984, he did not appear on the latter date. The Law Guardian, at the court’s request, was kind enough to telephone Mr. Baer and arranged for his appearance on January 26. Additional testimony was taken on that date, and on April 10,1984. The case was next scheduled for the afternoons of June 6 and June 7. The Law Guardian volunteered to notify him of those dates, and did so by a letter dated April 30, 1984, sent to his Wedge wood Drive, Coram, address.
Mr. Baer did not appear on June 6. Efforts made by the Law Guardian on June 6, both in the afternoon and evening, to reach Mr. Baer proved unsuccessful. On June 7, he again was absent. His nonappearance was noted, and the hearing concluded.
QUESTION PRESENTED
The petitioning school district and the respondents are locked in a bitter dispute as to whether the Baers reside within the Port Jefferson School District. Petitioner maintains that the respondents reside outside the district on *565 Wedge wood Drive in Coram, New York. The Baers, on the other hand, claim residence within the district at 320 Thompson Street, Port Jefferson, New York.
If the sole issue was where the Baers reside or are domiciled within the meaning of the Education Law, and thus where their children are entitled to receive a public education, the appropriate forum would be the Supreme Court, not the Family Court. The Supreme Court complaint would be in the nature of a declaratory judgment action coupled with a request that the Baers be enjoined from delivering their children to a school within the district.
The issue before me, however, is not simply one of residence. Indeed, even if it is established that the Baers do not reside within the Port Jefferson School District, that alone obviously would not be a proper predicate for a finding of educational neglect.
The petitioner has the burden of establishing that the respondents have failed to supply their children with an adequate education, and, as a result thereof, the emotional or mental condition of either or both of the children has been impaired, or is in imminent danger of becoming impaired.
The cornerstone of the district’s efforts to prove educational neglect rests on the proposition that the Baers not only do not reside within the district, but that they have intentionally engaged in a series of obstructionist tactics “to keep the School District at bay” while their children continue to be educated in the wrong school district. So where the Baers reside is an important question in the present case, but its answer is not dispositive of the issue before the court as would be true in a Supreme Court declaratory judgment action.
FACTS
The court’s findings of fact are as follows:
The Baers resided at 320 Thompson Street, Port Jefferson, for a number of years until the house became uninhabitable in December, 1977 due to a rupture of the water pipes and resulting extensive damage. The house was later condemned by the Village of Port Jefferson and labeled as “uninhabitable and unoccupied”.
*566 The Baers’ occupancy was with permission of its owner, Mr. Baer’s aunt, Minna Catanese, under some type of informal oral lease. That the Baers have lived elsewhere since December, 1977 is clear to the court because, inter alia, Mr. Baer so testified during the course of his June 25, 1982, examination before trial in his, and his aunt’s action against Lilco for allegedly causing the damage to the house by disconnecting electrical service. In sum, the evidence is overwhelming that the residence that the Baers presently claim within the school district, to wit, 320 Thompson Street, has been uninhabited by the Baers, and indeed uninhabitable, since the December, 1977 accident.
Although there were some inquiries by the school district as early as 1979 concerning the legitimacy of the Baers’ residence within the district, the question was not fully pursued until 1982. During the summer of that year, a school district census was conducted. Three families listed themselves as the sole residents at 26 Reeves Road, an address within the district. One of the families was the Baers. At about the same time, the census officer received information suggesting that the Baers resided outside the district, at an address in Coram. This prompted a check to the 26 Reeves Road address, where a source verified (incorrectly, as it developed) the Baers’ residency. In June, 1983, two persons contacted the census officer and said, in effect, that the Baers’ claimed 26 Reeves Road residency was a sham. Following an investigation, the census officer sent a letter to Mr. Baer which read as follows:
“It has come to our attention that you are no longer residing in the Port Jefferson School District, but have established residence in the Coram area.
“We have no recourse but to drop your children, Asher and Sharisse, from our rolls as of this year.
“If your situation should change before the opening of the 1983-84 school year, please contact the Pupil Personnel Office concerning reregistration”.
That letter was dated June 24,1983. Having received no answer, a “follow-up” of August 2, 1983, was sent. Both letters were sent to 119 Wedge wood Lane, Coram, New York, rather than to the correct street address of 103 Wedge wood Drive. However, neither letter was returned, *567 and Mr. Baer, during his testimony, acknowledged their receipt. Parenthetically, the census officer, as part of his investigation, traced the emergency telephone number that the Baers furnished the school district for the 1981-1982 and 1982-1983 school years. That telephone number was for a phone located in the Wedge wood Drive home of the Baers in Coram. During Mr. Baer’s testimony he indicated that he resided at that location, among others, but that he listed the phone under the name of his wife’s brother-in-law, Albert Morey, although Mr. Morey had absolutely nothing to do with the house. In essence, the listing under the name “Morey” is systematic of Mr. Baer’s studied efforts, to be discussed subsequently, to stymie the school district.
In September, 1983, Mr. Baer contacted the school district, presumably as a result of the June 24 and August 2 letters. He then claimed that 320 Thompson Street was his address. In response, the census officer visited the house, and observed that it was uninhabitable. A perusal of the village clerk’s records confirmed that fact, for the house had been condemned. The confrontation between Mr. Baer and the school escalated from there. He delivered his children to school in early September, 1983, producing a confrontation which was defused by the police.
At about that time, the attorney for the school district became involved. He sent several letters to Mr. Baer asking for some type of verification of residency within the district. Mr. Baer, who is a clever, extremely bright individual, is also a master, par excellence, at “stonewalling”. Indicative of Mr. Baer’s proficiency in this regard is found in his September 23 response to the school attorney’s request for residency information following the disclosures regarding 26 Reeves Road, 103 Wedge wood Drive and the hovel which is 320 Thompson Street. Believing that the best defense is a strong offense, he states: “Our legal residence remains in the Port Jefferson School District — there has been no change. If school records have been altered in this regard you will probably want to consult with whomever is responsible for the integrity of those records”.
The school district found itself in a quandary. The father continued to deliver the children to school daily, maintain *568 ing that Asher and Sharisse were entitled to be educated within the school district due to the family’s nexus to the 320 Thompson Street property. Should the school leave the youngsters on the sidewalk where delivered, or take them into the school until a court could address Mr. Baer’s position and actions? The petitioner, out of concern for the children, elected the latter course. Consequently, the children were provided with an education, under protest, by the district. They were excluded from only three days of class during the 1983-1984 school year, viz., October 6, 7 and 11. For those three days, the children stayed in an administrator’s office while the district made one final effort to resolve the situation short of litigation. That effort was unsuccessful, and the present educational neglect petition was filed.
On the return date of the petition, the court expressed its concern for the welfare of the children during the action’s pendency. It was then agreed by petitioner and respondent, and the court so ruled, that the continued attendance of the children in school during the action would not constitute an admission against the district’s interest or estop them from asserting that the children had no right to attend the Port Jefferson schools. As a result of that agreement by the parties, and ruling by the court, the children were permitted to complete the 1983-1984 school year. But for that agreement, and ruling, however, the children would have been expelled from the Port Jefferson School District.
Against the above factual background, attention will now be directed to the disjunctive questions of whether:
Question 1. Have the respondents failed to provide Asher or Sharisse with an adequate education as provided in article 65 of the Education Law, and if so, has the mental or emotional condition of either child been impaired as a result thereof?
OR
Question 2. Have the respondents failed to provide Asher or Sharisse with an adequate education as provided in article 65 of the Education Law, and, if the children are not presently suffering a mental or emotional impairment as a result thereof, are they in imminent danger of becoming so effected?
*569 Before discussing questions 1 and 2, a preliminary ruling is in order. The respondent Esther Baer, as noted previously, defaulted in appearing, although properly served with process. However, her default does not entitle the petitioner to a finding of neglect. Rather it simply permits the trier of fact to proceed in her absence and reach a determination based on the facts presented. The evidence in the present case, although uncontroverted by Mrs. Baer, does not establish neglect on her part. Therefore, the petition is dismissed as to Mrs. Baer. The legal discussion that follows consequently will be limited to the charges against Mr. Baer.
ANSWER TO QUESTION 1: THE RESPONDENT FATHER HAS FAILED TO PROVIDE HIS CHILDREN WITH AN ADEQUATE EDUCATION IN ACCORDANCE WITH THE PROVISIONS OF ARTICLE 65 OF THE EDUCATION LAW. HOWEVER, THE children’s PRESENT MENTAL OR EMOTIONAL HEALTH HAS NOT BEEN IMPAIRED THEREBY.
Initially it should be noted that the court looks with extreme disfavor upon the misguided stubborness exhibited by Mr. Baer under the guise of self-proclaimed righteousness. In his own inimitable way, he has managed to wreck havoc upon the Port Jefferson District administration by maintaining a position that may only be characterized as dangerously absurd. Unfortunately, Mr. Baer has placed his own interests ahead of the interests of his children and has otherwise engaged in a bureaucratic conflict at the childrens’ potential expense. As the Appellate Division, Second Department, has stated in Matter of Baum (61 AD2d 123, 130-131): “We cannot approve or sanction a parent’s defiance of our compulsory school attendance law as a means of compelling a school system to change the kind of education made available to its students, provided its procedures comply with the applicable law * * * A child may not be used as a pawn in a battle by a parent with public school authorities.”
Mr. Baer’s claim of residency at 320 Thompson Street is clearly without merit. It was interposed as an afterthought in September, 1983, when the 26 Reeves Avenue address was under attack, and all evidence indicated that the Baers resided outside the district in Coram. During the *570 course of Mr. Baer’s testimony at trial he was evasive about where he, his wife, and the children have been residing on a day-to-day basis. Even his admission that the emergency telephone number that he provided to the district for the 1981-1982 and 1982-1983 school years was for a telephone located at the 103 Wedge wood Drive, Coram, address, was tainted by the absurdity of the situation — Mr. Baer blithely volunteering that the phone was listed in the name of Albert Morey (his wife’s brother-in-law) who has absolutely nothing to do with the property.
In sum, the claimed residence within the district is a sham. His aunt’s home is not his home, either in the sense that is where he “hangs his hat” presently (i.e., it is his “residence”) or where he intends to “rehang his hat” permanently when the structure is again habitable (i.e., it is his “domicile”). It is not temporarily uninhabitable, awaiting repairs. Indeed, in answer to the court’s question, Mr. Baer testified that he had sufficient funds to restore the house independent of the outcome of the suit against Lilco. He has elected not to do so. Moreover the money involved in the suit against Lilco raises more questions than it answers. The petitioner called the general claims attorney for Lilco as a witness to provide the court with information concerning the lawsuit. He testified that the Baer/Lilco case appeared on a Pretrial Conference Calendar in early 1983. At that time, the attorney for Mr. Baer and his aunt demanded $3,850, Lilco offered $1,220, and the case was then compromised for $2,500, and was so marked on the Supreme Court Calendar. However that apparent settlement was never consummated due to some unspecified problem in the Baer camp. It is interesting, however, that the amount of money involved is so little, given Mr. Baer’s description of the alleged extensive damage caused by Lilco improperly terminating electrical service to 320 Thompson Street.
In any event, Mr. Baer’s reliance on the 320 Thompson Street address is not only spurious, but also was advanced, in my view, solely for the purpose of further frustrating the petitioner’s efforts to limit education within the district to residents of the district. And this he has so far successfully done, which leads us to the next point. Has Mr. Baer *571 supplied the children with an adequate education consistent with the provisions of article 65 of the Education Law?
A visceral response to that question might well be “yes”, for the children did receive a public education for the 1983-1984 school year, albeit in the wrong district. But closer scrutiny indicates that the correct answer is “no” — Mr. Baer has not supplied his children with an adequate education during the past school year. Rather, Asher and Sharisse were the beneficiaries of the petitioner’s good-faith efforts to protect and promote the children’s best interests, notwithstanding the unreasonable, unfair, and obstructionist tactics employed by their father. Under such circumstances, the defense that the children were supplied an adequate education does not ring true. Consider the following analogy: a father does not provide food for his children, although financially able to do so; a caring neighbor, therefore, feeds the children; the father is charged with neglecting the children and defends by stating: “the kids are being fed, so what are you talking about?”. Such a defense obviously would be rejected, for the father has not supplied, nor arranged for, the food to be provided to his children. The children were fed because the neighbor came to the rescue, and cured the father’s delinquency in caring for his children. Similarly Mr. Baer may not defend the present educational neglect petition by relying on the school district’s acceptance and education of his children, under vehement protest. This is particularly true since it is obvious to the court that not only is Mr. Baer’s residency claim frivolous, but he has been aware of that fact since he reintroduced the 320 Thompson address into the fray in September, 1983.
The court finds that Mr. Baer did fail to supply an adequate education to his children within the meaning of section 1012 (subd [f], par [i], cl [A]) of the Family Court Act.
Having found that Mr. Baer failed to provide an adequate education for his children, the inquiry shifts to whether this failure “impaired” the “mental or emotional” health of either child? The answer is “no”. Both children are excellent students. Although they did spend three days in an administrator’s office (viz., October 6, 7 and 11), and *572 were on the periphery, and presumably within “ear shot” of at least one vocal confrontation between their father and school officials, there is insufficient evidence in the record to establish that either child is presently experiencing an impairment of mental or emotional condition as a result thereof.
ANSWER TO QUESTION 2: THE RESPONDENT FATHER HAS FAILED TO PROVIDE HIS CHILDREN WITH AN ADEQUATE EDUCATION IN ACCORDANCE WITH THE PROVISIONS OF ARTICLE 65 OF THE EDUCATION LAW, AND THE CHILDREN ARE IN IMMINENT DANGER OF BECOMING EMOTIONALLY AND MENTALLY IMPAIRED AS A RESULT THEREOF.
As stated in answer to question 1, the finding has been made that Mr. Baer has not supplied his children with an adequate education within the meaning of section 1012 (subd [f], par [i], cl [A]) of the Family Court Act.
While the children are not presently suffering from emotional or mental impairment, I find that the children are, in the statutory language, “in imminent danger of becoming impaired as a result of the failure of [their] parent * * * to exercise a minimum degree of care * * * in supplying [them] with [an] adequate * * * education”. (Emphasis supplied.)
The “imminent danger” language of the statute is, of course, prospective in nature, requiring the court to project into the future. In the present case, however, that task is not difficult to do. Mr. Baer has defied logic and the law since the inception of the case, and for many months prior thereto. Quite simply, the confrontation between the school district and the respondent has reached the “11th hour”, with the emotional and mental future of the children being placed in imminent danger. The school district can’t give ground, for it is statutorily prohibited from providing a free education to nonresident students, which Asher and Sharisse clearly are. And Mr. Baer, based on past performance, almost certainly will continue to simply deliver the children to the schoolhouse steps on the theory that the district will eventually capitulate. This confrontation has placed the children in jeopardy. The court will endeavor to prevent, by an appropriately framed disposi *573 tional order, what would otherwise be the almost certain harm to the children.
CONCLUSION
The petitioner has established by a fair preponderance of the credible evidence that Robert Baer has educationally neglected his children. Therefore, as to Mr. Baer, the matter is scheduled for disposition, before me on September 20, 1984, at 9:00 a.m. in Part III of Family Court. The petition, as against Esther Baer, is dismissed for failure of proof as previously explained.